Matter of James TT. v Shermaqiae UU. (2020 NY Slip Op 03438)





Matter of James TT. v Shermaqiae UU.


2020 NY Slip Op 03438


Decided on June 18, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 18, 2020

528368

[*1]In the Matter of James TT., Appellant,
v
Shermaqiae UU., Respondent. (Proceeding No. 1.)
In the Matter of Shermaqiae UU., Respondent,
v
James TT., Appellant. (Proceeding No. 2.)

Calendar Date: May 18, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Michelle I. Rosien, Philmont, for appellant.
Carolyn Snyder Lemmon, Albany, for respondent.
Alexandra G. Verrigni, Rexford, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Albany County (Walsh, J.), entered December 28, 2019, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for permission to relocate with the subject child.
Pursuant to an October 2017 order, James TT. (hereinafter the father) and Shermaqiae UU. (hereinafter the mother) had joint legal custody of their child (born in 2016), with the mother having primary physical custody and the father having parenting time at least two weekends per month from 9:00 a.m. on Saturday until 7:00 p.m. on Sunday and at such other and further times as the parents could agree. In January 2018, upon learning that the mother was thinking of relocating from Albany County to North Carolina to be with the child's ailing maternal grandmother, the father commenced the first of these proceedings, seeking to prevent the mother from relocating with the child. In February 2018, upon stipulation of the parties, Family Court entered an order permitting the mother to temporarily relocate to North Carolina with the child. The temporary order provided that the father was to receive parenting time as the parents could mutually agree and that, in the event that the mother did not return to New York with the child by May 31, 2018, either party could request that the matter be placed on the court's calendar for further proceedings.
In May 2018, the mother commenced the second of these proceedings, seeking permission to permanently relocate to North Carolina with the child. The father thereafter amended his petition to request primary physical custody of the child. Following a fact-finding hearing, Family Court found that it was in the child's best interests to relocate with the mother to North Carolina and, accordingly, granted the mother's petition and dismissed the father's petition. Family Court ordered, among other things, that the parents continue to share joint legal custody of the child, that the mother have primary physical custody and that, until the child reached school age, the father have 10 consecutive days of parenting time every other month, as well as one month in the summer and such other and further parenting time as the parents could agree.[FN1] The court further directed that the father was entitled to liberal phone communication with the child, including a video call each night before bed. The father appeals, arguing that a sound and substantial basis does not exist in the record to support Family Court's determination that relocation was in the child's best interests.[FN2]
A custodial parent's proposed relocation provides the change in circumstances that is ordinarily required to modify an existing custody order (see Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1341 [2019]; Matter of Michael BB. v Kristen CC., 173 AD3d 1310, 1311 [2019]). The parent seeking to relocate a child's residence bears the burden of establishing, by a preponderance of the evidence, that the proposed relocation is in the child's best interests (see Tropea v Tropea, 87 NY2d 727, 741 [1996]; Matter of Hoffman v Turco, 154 AD3d 1136, 1136 [2017]). In determining whether the proposed relocation is in the child's best interests, courts must consider, among other factors, "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable [parenting time] arrangements" (Tropea v Tropea, 87 NY2d at 740-741; see Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [2018], lv denied 31 NY3d 909 [2018]). Inasmuch as Family Court is in a superior position to evaluate witness testimony and credibility, we accord great deference to its determination and will not disturb it if supported by a sound and substantial basis in the record (see Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1272 [2018]; Matter of Emily GG. v Tyler HH., 154 AD3d 1097, 1098 [2017]).
The mother testified that, as she was finishing up credits for a criminal justice degree in December 2017, she was terminated from her hourly employment, was unable to pay her living expenses and was on the verge of being evicted from her one-bedroom apartment. The mother testified that she had lost her employment because she had to frequently call out of work when the child was sick and could not attend day care. The mother stated that she could not rely on the father to provide backup child care in the event that the child was sick, stating that she would often ask him for help and that he rarely provided such help. The mother also testified that she did not have any family in the area who could help with child care.
The mother testified that, in North Carolina, she would be better able to provide financially for the child and would have greater familial support. The mother testified that the child's maternal grandmother and maternal aunt lived in North Carolina and that, although in poor health, the maternal grandmother was able to help with child care. She stated that she had secured salaried employment in North Carolina and, given her salary and the lower cost of living, was able to afford a two-bedroom apartment and more easily provide for the child's needs. She asserted that, unlike in Albany County, her improved economic situation allowed the child to have her own room and engage in extracurricular activities. Taken as a whole, the mother's testimony demonstrated, as Family Court found, that the mother's reasons for wanting to relocate were familial and economic and that the proposed relocation would likely enhance the lives of the mother and the child economically and emotionally (see Matter of Rebekah R. v Richard R., 176 AD3d at 1342-1343; Matter of Hammer v Hammer, 163 AD3d 1208, 1209-1210 [2018]; Matter of Perestam v Perestam, 141 AD3d 757, 758-759 [2016]).
The father opposed the mother's proposed relocation with the child, initially seeking to keep the mother in the area and later seeking primary physical custody of the child. It was undisputed that the father consistently exercised his parenting time with the child every other weekend. The father testified that he had developed a strong bond with the child and that the child had also bonded with her older half sister, of whom the father had custody. As Family Court recognized, "[t]he obvious disadvantage" of the mother's proposed relocation to North Carolina was the "physical separation of [the child] from her father." However, as the court noted, the mother had been the child's primary caregiver since birth and, even when the mother and the child lived locally, the father did not often seek or take opportunities for additional parenting time outside of his scheduled parenting time.
The mother repeatedly testified as to her intention and willingness to foster a meaningful relationship between the father and the child, as well as the child and her half sister, through regular periods of parenting time and liberal phone and video contact. Additionally, the mother offered to assist with transporting the child to the father for his parenting time and to defray transportation costs incurred by the father. Family Court credited the mother's testimony and found that the mother would "undertake meaningful efforts to ensure that [the child] maintains contact with her father and has a meaningful relationship with her sister." According deference to Family Court's credibility determinations, we find that Family Court reasonably concluded that the father's relationship with the child could be preserved through extended periods of parenting time and daily phone and/or video calls (see Matter of Rebekah R. v Richard R., 176 AD3d at 1342-1343), all of which Family Court provided for in detail in its order.
Family Court weighed the competing considerations associated with the mother's proposed relocation with the child and determined that such relocation was in the child's best interests. Upon review of the record, we are satisfied that a sound and substantial basis exists to conclude that the child's best interests would be served by allowing the mother and the child to relocate to North Carolina, with extended periods of parenting time to the father (see Matter of Hoffman v Turco, 154 AD3d at 1137-1139; Matter of Barner v Hampton, 132 AD3d 1098, 1100 [2015]; Matter of Spaulding v Stewart, 124 AD3d 1111, 1112-1113 [2015], lv denied 25 NY3d 903 [2015]). As such, there is no basis upon which to disturb Family Court's order.
Garry, P.J., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Family Court directed that, once the child entered kindergarten, the father was to receive parenting time during all school breaks, except the winter/Christmas break, which was to alternate between the parents.

Footnote 2: The attorney for the child argues that Family Court's determination is supported by a sound and substantial basis in the record and that it should therefore be affirmed.